```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
LOURDES RUIZ,                                   :

                       Plaintiff,               :    OPINION & ORDER

          -v.-                                  :
                                                     20 Civ. 7638 (GWG)
COMMISSIONER OF SOCIAL SECURITY,                :

                                                :
                       Defendant.
---------------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Plaintiff Lourdes Ruiz brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for Disability Insurance Benefits under the Social Security Act ("the Act"). Both parties have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1] For the reasons set forth below, Ruiz's motion is denied, and the Commissioner's cross-motion is granted.

I. BACKGROUND

    A. Procedural History

On April 26, 2017, Ruiz filed an application for disability insurance benefits, alleging disability beginning on October 28, 2015. See SSA Administrative Record, filed June 1, 2021 (Docket # 20) ("R."), at 232. Ruiz's application was initially denied on August 7, 2017, see R.

---

[1] See Plaintiff's Motion for Judgment on the Pleadings, filed Oct. 1, 2021 (Docket # 24); Plaintiff's Memorandum of Law in Support of Motion for Judgment on the Pleadings, filed Oct. 1, 2021 (Docket # 25) ("Pl. Mem."); Defendant's Memorandum of Law in Support of Cross-Motion on the Pleadings, filed Mar. 2, 2022 (Docket # 31) ("Def. Mem."); Defendant's Cross-Motion for Judgment on the Pleadings, filed Mar. 3, 2022 (Docket # 32); Plaintiff's Reply Memorandum of Law, filed Apr. 4, 2022 (Docket # 35); Defendant's Reply Memorandum of Law, filed Apr. 18, 2022 (Docket # 40).

183, after which Ruiz requested a hearing before an administrative law judge ("ALJ"), see R. 123-24.  A hearing was held on March 1, 2019.  See R. 23.  In a written decision dated April 25, 2019, the ALJ found that Ruiz was not disabled and denied Ruiz's claim.  See R. 104-13.  Ruiz requested a review by the Appeals Council, see R. 218-19, which was denied on July 15, 2020, see R. 1-3.  On September 17, 2020, Ruiz filed this action seeking review of the ALJ's decision.  See Complaint, filed Sept. 17, 2020 (Docket # 1).

    B.  The Hearing Before the ALJ

The hearing was held in New York, New York.  See R. 25.  Ruiz appeared in person with her representative William Aronin.  See id.  Vocational Expert ("VE") Pat Green and Medical Expert Dr. Richard Cohen also appeared via telephone.  See id.  Ruiz participated in the hearing with the aid of a Spanish language interpreter.  Id.  Ruiz was 54 years old at the time of the hearing.  See R. 33.

Ruiz testified that she had some limitations in her ability to speak and understand English.  See R. 33-34.  Ruiz sometimes asked her psychologist for help with understanding her mail, as Ruiz's mind would sometimes go "blank," and she would not understand the letters.  R. 49-50.  Ruiz attended two years of college in Puerto Rico.  See R. 35.  She previously worked as a housekeeper for a hospital.  See R. 38-40.  Ruiz was assaulted at her workplace in 2008, resulting in injuries to her back and neck.  See R. 40-41.  Ruiz ended her employment as a housekeeper due to further deteriorations in these injuries.  See id.

Ruiz has a car and can drive.  R. 52.  Once or twice a week she would assist her church with serving meals to the homeless.  R. 42-44.  This food service lasted approximately two hours and she did not stand for periods longer than 15 minutes due to back pain.  R. 48.

Dr. Cohen testified that Ruiz had major depressive disorder, with symptoms including anhedonia, sleeping problems, appetite problems, decreased self-esteem, decreased energy, and decreased concentration.  R. 57.  Dr. Cohen stated that Ruiz had post-traumatic stress disorder, which caused "nightmares, flashbacks, intrusive memories, fears, avoidance behavior, [and] detachment from others."  R. 58.  Dr. Cohen also briefly opined that Ruiz had several other disorders, such as anxiety disorder, somatoform disorder, and psychotic disorder with paranoid ideations and auditory hallucinations.  R. 57.  As for Ruiz's cognitive abilities, Dr. Cohen opined that she had marked impairments in "getting along with others," and in "[c]oncentration, persistence and pace," as well as moderate limitations in "her cognitive functioning"[2] and in adapting and managing herself.  R. 58.  However, after being informed that Ruiz could drive a car, Dr. Cohen revised his opinion to a moderate limitation in concentration, persistence, and pace.  R. 59.  Proceeding to the paragraph C criteria for the listings described above, Dr. Cohen stated that Ruiz

> does have partial ability to adapt to the stress of work.  And, if I add the stress of work on top of any ADLs she does, she would have an increase in her intrusive memories, auditory hallucinations, suicide potential, problems with energy, concentration, sleep, increase in her somatic complaints, increase in her nightmares and flashbacks . . . and increase in her avoidance behavior to the point where she'd miss more than three days a month of work.

R. 71.  Dr. Cohen concluded that Ruiz would meet the paragraph C criteria, but not the paragraph B criteria, for listings 12.03, 12.04, 12.07, and 12.15.  R. 72.

---

[2]  Although Dr. Cohen's testimony is somewhat ambiguous as to which area of cognitive functioning he was referring to when stating that Ruiz's "cognitive functioning" was moderately impaired, see R. 57-58, he later summarized his opinion as "moderate, marked, marked, moderate," R. 58.  Because each of the other three of the four broad areas of mental functioning were more clearly designated in Dr. Cohen's testimony, see R. 57-58, we infer that Dr. Cohen was referring to "understanding, remembering, or applying information" when he stated that Ruiz had a moderate limitation in cognitive functioning.

The ALJ then questioned the VE.  See R. 73.  The ALJ asked the VE whether there would be work available in the national economy for:

> a person born on February 11th of 1965 with a high school education and the ability to read and write in simple English only, and the person has the same past work history as Ms. Ruiz.  I'd like you to assume that this person can work at the light exertional level with only occasional overhead reaching, and is further limited to simple, routine and repetitive tasks in which the person did not have to work with the public, and have only occasional and casual contact with coworkers.

R. 75-76.  The VE responded that work was available in the positions of assembler of small products, final assembler, and hand packager.  R. 76-77.

C.  The Medical Evidence

Both Ruiz and the Commissioner have provided detailed summaries of the medical evidence.  See Pl. Mem. at 3-11; Def. Mem. at 3-12.  The Court directed the parties to specify any objections they had to the opposing party's summary of the record, see Scheduling Order, filed June 2, 2021 (Docket # 21), ¶ 5, and neither party has done so.  We adopt the parties' summaries of the medical evidence in the record as accurate and complete for purposes of the issues raised in this suit.  We discuss the medical evidence pertinent to the adjudication of this case in Section III below.

D.  The ALJ's Decision

The ALJ denied Ruiz's application on April 25, 2019.  See R. 113.  In doing so, the ALJ concluded that Ruiz had not been under a disability within the meaning of the Social Security Act from October 28, 2015 through December 31, 2018, the date Ruiz was last insured under the Act.  See id.

Following the five-step test set forth in the Social Security Administration ("SSA") regulations, the ALJ found that Ruiz met the insured status requirements through December 31, 2018.  See R. 106.  The ALJ found that Ruiz had not engaged in substantial gainful activity from

her alleged disability onset date of October 28, 2015 through December 31, 2018.  Id.  At step two, the ALJ found that Ruiz had the following severe impairments: "cervical and lumbar strain," "major depressive disorder with psychotic features; and post-traumatic stress disorder." R. 107.

At step three, the ALJ found that Ruiz "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1" during the relevant period.  Id.  The ALJ specifically considered listings 12.04 ("Depressive, bipolar, and related disorders") and 12.15 ("Trauma- and stressor-related disorders").  Id.; see also 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ first considered whether Ruiz's symptoms met the "paragraph B" criteria for these listings.  See R. 107-08.  The paragraph B criteria require that "the mental impairment must result in at least one extreme or two marked limitations in a broad area of functioning[,] which are: understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; [and] adapting and managing oneself."  R. 107.  The ALJ found that Ruiz had moderate limitations in each of the four broad categories of mental functioning, and thus did not satisfy the paragraph B criteria.  R. 107-08.  The ALJ then found that Ruiz had also not satisfied the paragraph C criteria.  R. 108.

Before moving to step four, the ALJ assessed Ruiz's residual functional capacity ("RFC") for the relevant period.  Id.  The ALJ determined that Ruiz's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Ruiz's] statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." R. 109.  The ALJ concluded that

>through the date last insured, [Ruiz] had the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b), except that she could only occasionally reach overhead because of her neck and back impairments. In order to accommodate her mental impairments, I limited the claimant to simple routine tasks where she did not have to work with the public and had only casual and occasional contact with coworkers.

R. 108.

At step four, the ALJ concluded that Ruiz was "unable to perform any past relevant work," during the relevant time period. R. 111. Finally, at step five, considering Ruiz's "age, education, work experience, and residual functional capacity," the ALJ found that "there were jobs that existed in significant numbers in the national economy that [Ruiz] could have performed." R. 112. Accordingly, the ALJ determined that "[a] finding of 'not disabled' [was] appropriate." Id.

## II. GOVERNING STANDARDS OF LAW

### A. Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (punctuation omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (punctuation omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence

supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (punctuation omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012). Rather, substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (punctuation omitted) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (punctuation omitted). "[T]he threshold for such evidentiary sufficiency is not high." Id. The Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original) (punctuation omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (punctuation omitted).

    B.  Standard Governing Evaluation of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A). A person will be found to be disabled only if it is determined that his

"impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his or her age, education, or work experience. See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). Fourth, if the claimant's

impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III. DISCUSSION

Ruiz raises two arguments challenging the ALJ's decision. First, Ruiz contends that the ALJ failed to properly evaluate whether Ruiz met paragraph C of listings 12.04 and 12.15. See Pl. Mem. at 13-20. Second, Ruiz argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ "rejected the only medical opinion of record" and allegedly relied on the state agency single decision maker ("SDM"). See id. at 20-23. We address each argument next.

A. Paragraph C Criteria

Ruiz argues that the ALJ erroneously found that Ruiz did not meet listings 12.04 and 12.15 by concluding that she did not satisfy the paragraph C criteria for those listings. See id. at 13-14. Ruiz maintains that the ALJ's decision contained almost no analysis of whether she met paragraph C and very little analysis of Dr. Cohen's conclusion that Ruiz met paragraph C. Id. at

14-16. Ruiz also suggests that the ALJ placed improper weight on the fact that Ruiz was able to drive and volunteer, and that doing so effectively substituted the ALJ's lay opinion for that of medical expert Dr. Cohen. Id. at 15-17.

To satisfy the requirements of listings 12.04 or 12.15, a claimant must meet the criteria of paragraph (A) and either paragraph (B) or (C) of those listings. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.15. Because Ruiz has not sought review of the ALJ's determination that she did not meet paragraph B, our review is limited to paragraph C for both listings. The paragraph C criteria for listings 12.04 and 12.15 are identical. See id.

The paragraph C criteria are used "to evaluate mental disorders that are 'serious and persistent,'" recognizing that "mental health interventions may control the more obvious symptoms and signs of [a claimant's] mental disorder." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(1). A mental disorder meets the paragraph C criteria if there is

> a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> > 1. Medical treatment, mental health therapy, psychosocial support(s) or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the claimant's] mental disorder; and
> >
> > 2. Marginal adjustment, that is . . . minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [the claimant's] daily life.

See id. §§ 12.04(C), 12.15(C) (citations and emphasis omitted). The requirement of marginal adjustment is demonstrated "where there is evidence that changes or increased demands have led to exacerbation of symptoms and signs, and to deterioration in functioning." Campbell v. Comm'r of Soc. Sec., 2020 WL 5641200, at *11 (S.D.N.Y. Sept. 22, 2020) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(G)(2)(c)). "Examples of such deterioration include the inability to function outside of your home or a more restrictive setting[] without substantial psychosocial

support; the necessity for a significant change in medication or other treatment; and episodes of deterioration that require hospitalization." Id.

The ALJ's conclusion that Ruiz did not meet the paragraph C criteria was initially stated as follows:

> In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The claimant does not have a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence of both: (1) medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and diminishes the symptoms and signs of the claimant's mental disorder; and (2) a marginal adjustment where the claimant has minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life.

R. 108. In other words, the ALJ simply stated that Ruiz did not meet the criteria without further elaboration.

Where an ALJ's decision merely contains a conclusory statement that a claimant did not meet paragraph C, courts have in some instances remanded for additional findings. See Rivera v. Colvin, 2015 WL 1027163, at *14 (S.D.N.Y. Mar. 9, 2015) (collecting cases). However, such remands are not necessarily required. As one court put it, "[w]hile cursory treatment of the paragraph C criteria may be a basis for remand in certain circumstances, [a]n ALJ's unexplained conclusion [at step three] of the analysis may be upheld where other portions of the decision and other clearly credible evidence demonstrate that the conclusion is supported by substantial evidence." Campbell, 2020 WL 5641200, at *11 (punctuation omitted) (quoting Ryan v. Astrue, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014)); see Schildwachter v. Berryhill, 2019 WL 1116256, at *7 (S.D.N.Y. Feb. 8, 2019) (ALJ's failure to explicitly assess paragraph C criteria was harmless error where other portions of ALJ's decision and clearly credible evidence in the record indicated that plaintiff could not meet the criteria).

Notably, Social Security Ruling 17-2P provides that an ALJ's determination that a claimant does not meet a listing does not require extensive explanation and may be explained at a later step in the process:

> If an adjudicator at the hearings or AC level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.

SSR 17-2P, 2017 WL 3928306, at *4 (S.S.A. Mar. 27, 2017); accord John H. v. Comm'r of Soc. Sec., 2022 WL 748237, at *6 (W.D.N.Y. Mar. 11, 2022).

Here, the ALJ in fact provided a rationale at a later step. In addressing the RFC, the ALJ returned to the issue of the paragraph C criteria when analyzing the opinion of Dr. Cohen, the only medical expert to have concluded that Ruiz met the paragraph C criteria. See R. 110-11. Dr. Cohen had found that Ruiz met listing 12.04 "because she would not have been able to work and perform her activities of daily living." R. 71-72. But the ALJ properly noted that "with medication[s] that are sometimes changed, she was able to function, drive and volunteer." R. 111. Accordingly, the ALJ did not find Dr. Cohen's opinion "to be [so persuasive] that it would overcome the opinion of Dr. Kushner," who found that Ruiz's limitations were not significant enough to interfere with her daily functioning, and whose opinion the ALJ regarded as "more consistent with the treating records of the claimant's health care providers." Id. Because Dr. Cohen was the only medical source in the record to opine that Ruiz met the paragraph C criteria, and because the ALJ specifically provided a rationale for parting with this aspect of Dr. Cohen's

opinion, the ALJ fulfilled her obligation to place reasons on the record for her determination that Ruiz did not meet the paragraph C criteria, and thus, listings 12.04 and 12.15.

Ruiz argues that the ALJ's explanation that Ruiz did not meet paragraph C because she could "function," was "woefully deficient, as the ALJ did not otherwise identify what [s]he meant by 'function,' beyond driving and volunteering." Pl. Mem. at 14. While we agree that the ALJ could have been more detailed as to the term "function," it is clear from the ALJ's decision that she placed weight on several areas of functioning that the record demonstrated Ruiz could perform. The ALJ noted that, following the alleged onset of Ruiz's disability, she "acted as companion to her sick mother, and has volunteered to serve the homeless since at least February 2018." R. 109. The ALJ further explained that Ruiz "travels by public transportation or drives her own car." Id. The ALJ elsewhere noted more generally that Ruiz "does her own activities of daily living." R. 108.

These findings were supported by the record. In addition to her ability to operate a car, Ruiz was able to navigate public transportation via both bus and train. R. 46, 94. Evidence in the record uniformly indicated that Ruiz was able to maintain appropriate hygiene and groom herself. See R. 358, 424, 458, 685, 944. Ruiz reported that she prepared meals for herself at least once daily, R. 271, and that she shopped for her own groceries, R. 272. She could do her own laundry once weekly and cleaned her own apartment. See R. 459, 944. Ruiz reported that she was able to handle her own money and pay bills, R. 273, and that her ability to do so had not changed during the period for which she claimed disability, id. Dr. Kushner's opinion, which the ALJ found more persuasive than Dr. Cohen's opinion, noted that Ruiz "does her own chores and manages her own money." R. 459. An August 5, 2015 treatment note by Victor Bulnes, P.A., indicated that Ruiz had no difficulties with a series of activities of daily living, including

cooking, shopping, driving, housekeeping, laundry, and money management.  R. 390.  Accordingly, substantial evidence in the record supported the ALJ's finding that Ruiz was able to function independently.

"Courts in this Circuit routinely have found that no reasonable fact finder could conclude that a plaintiff could meet [the paragraph C criteria] when, inter alia, the plaintiff functioned mostly independently, including by shopping, going online, traveling independently and managing money, and was observed to have goal-directed thoughts."  Campbell, 2020 WL 5641200, at *12; see Holdridge v. Comm'r of Soc. Sec., 351 F. Supp. 3d 316, 322 (W.D.N.Y. 2018) (determination that claimant did not satisfy paragraph C was supported by findings that the claimant did not suffer repeated episodes of decompensation and did not have an inability to function independently); Brush v. Berryhill, 294 F. Supp. 3d 241, 264 (S.D.N.Y. 2018) (ALJ's finding that claimant did not meet paragraph C was supported by the fact that claimant "lived independently and managed her own affairs" and had "never been hospitalized or otherwise experienced an acute deterioration in her functioning"); accord Ivey v. Comm'r of Soc. Sec., 2020 WL 5046261, at *9-10 (W.D.N.Y. Aug. 27, 2020); Jeffrey W. v. Berryhill, 2019 WL 2210593, at *7-8 (N.D.N.Y. May 22, 2019); Mitchell v. Berryhill, 2018 WL 3300683, at *17-18 (S.D.N.Y. Feb. 2, 2018), adopted, 2018 WL 1568972 (S.D.N.Y. Mar. 30, 2018).  The ALJ's conclusion was consistent with Dr. Kushner's findings that Ruiz's impairments were not "significant enough to interfere with [her] ability to function on a daily basis."  R. 460.

Thus, remand is not warranted based on the ALJ's step three analysis.

B.  RFC Determination

Ruiz next argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ (1) "rel[ied] solely on the findings of the state agency Single Decision

Maker," and (2) rejected Dr. Ravi's opinion, the only medical opinion in the record as to Ruiz's physical limitations. Pl. Mem. at 20.

First, we discern no error relating to the findings of the state agency SDM. Ruiz is referring to an RFC assessment prepared at the administrative level, see R. 83-96, which concluded that Ruiz could perform "light work," R. 95. Although it is settled that an ALJ may not rely on the medical opinions of an SDM, see Andrisani v. Comm'r of Soc. Sec., 2019 WL 1292233, at *3-4 (W.D.N.Y. Mar. 21, 2019); Kociuba v. Comm'r of Soc. Sec., 2017 WL 2210511, at *8-9 (N.D.N.Y. May 19, 2017), the ALJ never mentioned the SDM's assessment in her decision. Ruiz's argument is that the ALJ must have credited the findings of the state agency SDM because the only examining source opinion in the record as to Ruiz's physical limitations was that of Dr. Ravi, which the ALJ found not persuasive. Pl. Mem. at 20-21. This attack, however, is an attack on the soundness of the RFC determination and cannot be grounded in the rules pertaining to reliance on an SDM's medical opinion given that the ALJ never gave weight to that opinion.

As to the support for the ALJ's RFC determination, we find that the ALJ's RFC determination was supported by substantial evidence notwithstanding the ALJ's decision not to credit Dr. Ravi's opinion. The only medical opinion in the record that found Ruiz to have physical limitations was that of Dr. Ravi. While the ALJ found Dr. Ravi's opinion as a whole to be unpersuasive, the ALJ's decision correctly noted that "[n]umerous physical examinations by [Ruiz's] treating health care providers showed that she generally had full strength in her upper and lower extremities, mild decrease range of motion in her neck and back, and mild discomfort with straight leg raising but no other neurological deficits." R. 109. This determination is supported by substantial evidence in the record in that Ruiz's own doctor reported only mild

deficits in motion and strength.  See R. 436, 446, 454, 495, 512-13, 559, 576, 735, 749, 760.  In the absence of a persuasive medical opinion to the contrary, the ALJ was entitled to rely on the absence of limitations reflected in the record to conclude that Ruiz could perform light work.  This principle was demonstrated in Monroe v. Commissioner of Social Security, 676 F. App'x 5 (2d Cir. 2017), where the Second Circuit considered the argument that an ALJ's rejection of the only medical opinion in the record meant that "there was no competent medical opinion that supported the ALJ's RFC determination."  Id. at 8.  Monroe held that "[w]here . . . the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required."  Id. (punctuation and internal citation omitted).

     Notably, with one exception described below, Dr. Ravi's opinion was in fact consistent with the RFC finding, given that Dr. Ravi found only "moderate" limitations in "standing, walking, bending, pushing, pulling, lifting, carrying, and overhead activities."  R. 946.  "Courts in this circuit have consistently found that moderate limitations in a plaintiff's ability to perform exertional activities are consistent with an RFC for light work."  Renee L. v. Comm'r of Soc. Sec., 2022 WL 685285, at *9 (N.D.N.Y. Mar. 8, 2022) (collecting cases); accord White v. Berryhill, 753 F. App'x 80, 82 (2d Cir. 2019) (consultative physician's opinion that plaintiff had moderate limitations in standing, sitting, and performing "other activities" supported RFC for light work); Gasperini v. Comm'r of Soc. Sec., 2022 WL 970522, at *7 n.4 (S.D.N.Y. Mar. 31, 2022) (opinion that claimant had "moderate limitation for sitting, standing, walking, climbing stairs, lifting, and carrying" was "consistent with the requirements of light work."); Burpoe v. Berryhill, 2019 WL 3329818, at *15 (S.D.N.Y. July 24, 2019) (range of "moderate restrictions" were "all consistent with an RFC to do light work."); Gurney v. Colvin, 2016 WL 805405, at *3

(W.D.N.Y. Mar. 2, 2016) (finding opinion of moderate limitations in "heavy lifting, bending, reaching, pushing, pulling, or carrying" consistent with RFC assessment for light work); Nelson v. Colvin, 2014 WL 1342964, at *12 (E.D.N.Y. Mar. 31, 2014) ("the ALJ's determination that [p]laintiff could perform 'light work' is supported by [doctor's] assessment of 'mild to moderate limitation for sitting, standing, walking, bending, and lifting weight on a continued basis'"); Crews v. Astrue, 2012 WL 1107685, at *17 (S.D.N.Y. Mar. 27, 2012), adopted, 2012 WL 2122344 (S.D.N.Y. June 12, 2012) (ALJ's RFC finding of light work was consistent with source opinion that plaintiff "suffered from only 'mild-to-moderate limitations with bending, lifting, carrying, . . . prolonged periods of sitting, standing, or climbing stairs.'"); Vargas v. Astrue, 2011 WL 2946371, at *6, *12 (S.D.N.Y. July 20, 2011) (finding "moderate limitations for lifting, carrying, handling objects, and climbing stairs" consistent with RFC for full range of light work).

The one exception is that Dr. Ravi stated that Ruiz required the use of a cane to stand. R. 944. The ALJ disagreed specifically with Dr. Ravi's finding that Ruiz required a cane because "the claimant's treating health care provider found that she had full strength in her lower extremities[,] as did Dr. Ravi." R. 110. The ALJ further explained that Dr. Ravi's opinion was not persuasive because "[h]e did not find any sensory deficits and there was no testing for diabetic neuropathy," and so the opinion was "not based on his examination results or supported by the treating records." Id.

While this is a closer question, we cannot say that the record lacked substantial evidence to support the ALJ's finding regarding Ruiz's need for a cane. The ALJ properly noted that this aspect of Dr. Ravi's opinion was unexplained and was contrary to Dr. Ravi's finding that Ruiz had full strength in her upper and lower extremities. See R. 110, 945. Additionally, Dr. Drazic, who treated Ruiz for the injuries to her neck and lower back following her assault, consistently

noted that she had full strength in her upper and lower extremities and was able to walk on her toes and heels.  R. 436, 446, 454, 495.  While there are some instances in the record where it is noted that Ruiz used a cane, there are also numerous indications in the record — spanning many years — where Ruiz's gait was described as "steady" and where no use of a cane or "assistive device" was noted.  See R. 679, 685, 691, 697, 703, 709, 715, 721, 727, 751, 762, 787, 791, 795, 801, 803, 805, 807, 809, 811, 822, 828, 834, 840, 846, 852; see also R. 387 ("no gait abnormality").  In light of this record, we cannot say that the ALJ's determination regarding Ruiz's need for a cane was not supported by substantial evidence.  See Starr v. Comm'r of Soc. Sec. Admin., 2022 WL 220408, at *7 (S.D.N.Y. Jan. 26, 2022) (ALJ could reject aspect of physician's opinion that was inconsistent with physician's own clinical findings and other evidence in the record).

IV.     CONCLUSION

For the foregoing reasons, Ruiz's motion for judgment on the pleadings (Docket # 24) is denied, and the Commissioner's cross-motion for judgment on the pleadings (Docket # 32) is granted.

SO ORDERED.

Dated: September 6, 2022
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge